## Case No. 11,210.

### The PLATINA.

[3 Ware, 180; [1] 21 Law Rep. 397.]

District Court, D. Massachusetts. July, 1858.

ADMIRALTY—STATE CLAIM—PLEADING AND PROOF—SET-OFF IN CAUSE OF DAMAGE—ABDUCTION OF MINOR—ADVANCES FOR CLOTHING.

1. In the admiralty, when the respondent intends to rely on the objection of the staleness of the claim, or any other defence that does not go to the merits, it should be propounded by

----

[1] [Reported by George F. Emery, Esq.]

formal plea, or by a distinct allegation in the answer. Otherwise, evidence will not ordinarily be received to support it.

[Cited in The G. H. Starbuck. Case No. 5.378. Southard v. Brady, 36 Fed. 561; The Queen of the Pacific, 61 Fed. 215.]

2. A set-off, or compensation founded on contract, express or implied, is no defence to a libel in a cause of damage. But in a suit by a parent for the wrongful abduction of his minor son, where the damage, substantially, is loss of service, the court is not absolutely precluded from taking into consideration. in determining the amount of damage, the advances of clothing and other necessaries for the minor during the time.

[3. Cited in Cutting v. Seabury, Case No. 3.-521, to the point that knowledge of the minority by the respondent is essential to the maintenance of an action by a father for the loss of his minor son.]

In admiralty.

C. G. Thomas, for libellant.

A. S. Cushman, for respondents.

WARE, District Judge. This is a libel brought by James N. Luce, of Edgarton, the father of James W. Luce, against Andrew Hicks, in a cause of damage. He propounds and alleges in his libel, that on the 13th of July, 1850, Hicks, at New Bedford, being then the owner of the bark Platina, shipped James W. Luce, his son, at that time a minor of the age of nineteen years and three months only, for a whaling voyage in said bark to the Pacific Ocean, without his knowledge or consent; thus wrongfully depriving him of the labor and services of his child, and withdrawing him from his custody and control for the remaining period of his minority. He claims damages for the loss of his son's services, as well as for the violation of his paternal rights, by this wrongful abduction. The bark returned to New Bedford July 11th, 1853, after an absence of three years.

The answer admits the shipment of J. W. Luce at the time alleged in the libel, but alleges that he was shipped as a man of full age, and for full wages; and that, if he was a minor, he had been emancipated, and had been permitted to act for himself, and enjoy the proceeds of his own labor and industry; that he was settled with at Talcahuana, a port in Chili, and there paid the full amount of his lay, and by his own consent discharged from the bark for the purpose of going on another whaling voyage.

The minority of the young man was satisfactorily proved, as it is alleged in the libel, and there was no proof of a formal nor of an informal and constructive emancipation, as by his leaving his paternal home, being allowed to dispose of his own time, and appropriate to himself the proceeds of his own industry. On the contrary, the proof is that he continued an inmate of his father's family, and worked with him on his farm for his benefit. And also it appeared that it must have been known, if not to the owner personally, at least to his agents, whose acts are imputable to him, at the time of the shipment, that he was a minor, as in the crew list he is,

in the description of his person, put down as of the age of nineteen. The minor having been shipped without the father's consent or knowledge, there can be no pretence that he carried with him an implied authority to receive his wages, and the master, who made the settlement, must be held to have done it in his own wrong. There is, therefore, no legal bar to the father's recovering, in the form of damages, of the actual value of his son's services during his minority, and his wages may be assumed as a reasonable measure of the value of those services, of which he was deprived by the act of the respondent.

The libellant also claims further damages for the violation of his paternal rights by the wrongful abduction of his child, in withdrawing him from his control, and depriving him of the comfort and satisfaction of his son's society, and the child of the benefit of the influence, counsels, and examples of a parent in forming his habits for his future life. This claim would stand on stronger ground, if the boy had been of a tender age, and thus having more need of domestic training, and of the care and watchfulness of a parent in regard to his education and morals; or, if it appeared that the father had purposed and intended his son for a different employment. But he had arrived nearly at full age. He had been on one whaling voyage before, and, as far as appears, without objection on the part of the father. if not with his consent. It does not appear that the father had any objection to his son's engaging in a seafaring life. No complaint of this kind was made on the return of the vessel. He was disappointed and dissatisfied when he found that the wages had been paid, but did not complain of the voyage. There may be a legal ground of action for the violation of his paternal rights; and these, when exercised in the true spirit of a parent, I think the law ought to allow to be wantonly invaded with impunity; but this is not a case requiring a court to mark it with exemplary damages of this kind.

But the counsel for the respondent has urged an objection that goes to the whole libel; it is that the demand is stale, and not fit to be entertained by a court of justice. If it were the intention of the respondent to rely on this defence, it should have been regularly pleaded. According to the practice of the admiralty, a defence that does not meet the merits of the case cannot avail the respondent unless he gives the adverse parties notice of such defence by a plea or a distinct allegation in the answer. But in this case enough has been shown by the testimony to overcome this defence if it had been formally propounded. The voyage terminated in July, 1853, and the libel was filed in June, 1857. The claim is therefore not barred by the statute of limitation, even if that statute applied in the admiralty, which it does not. But courts of admiralty, like those of equity, though not bound by the statute, considering it as a law of repose, have always acted in

deference to the principles and reason of the statute. They will not actively lend their aid to enforce stale demands. But the objection of staleness properly applies, at least with the most stringency, when the demand has been suffered to sleep for a considerable time in silence, and the pretended debtor has been left to rest in security until, by lapse of time and inattention, he may have lost the means of making an effectual defence to an unfounded or doubtful claim. If, then, an action is suddenly sprung upon him, he may justly call in aid the reason and equity of this statute of repose and oblivion. In the present case the creditor has not slept on his demand. From the beginning he expressed his dissatisfaction with the settlement and payment by the master. He wanted and had calculated on his son's wages to pay for some land which he had added to his farm. He continued to insist on his rights. He offered a compromise, which was rejected. A reference was agreed upon, and afterwards declined by the respondent; and he was finally driven to a libel as his only resource. Had this defence been pleaded, it must have been overruled on the evidence.

The respondent has offered in evidence certain advances made during the voyage as a set-off or compensation against the demand in this libel. Such advances are a natural and proper charge on wages. But this is not a suit for wages on a contract, actual or implied; it is in a cause of damage, and a set-off, being a right or title, founded on contract, is no defence to a libel founded on a tort. But the damages, as to the amount, are referred to the discretion and conscience of the court, on the whole case, and all its circumstances; and I do not know that it is absolutely precluded from taking these into consideration in a case like the present, when the loss of service is the principal measure of damage. The whole lay, as it is set forth in the libel, amounted to $578.80. The period of service was three years; one year and nine months of which were during the boy's minority. This would make the father's share $337. The answer states the whole lay a little less. Upon all the circumstances of the case, if the damages are fixed at $12 a month, for twenty-one months, to cover the loss of service, and the wrong done to the libellant's parental right, it does not appear to me to be an unreasonable measure.